JOSEPH VEILE, Administrator of the Estate of Leonard Koch, deceased, *v.* MICHAEL KOCH, Guardian of the minor heirs of Leonard Koch, deceased.

### AGREED CASE FROM ST. CLAIR.

A, being in feeble health and a resident of Missouri, was brought by B to Illinois, and lived in the house of B, as a guest, furnishing his own room and a part of his food, but occupying the room at the sufferance of B. A had two daughters, within the age prescribed by the fourth section of the act, entitled "An Act to amend an act relative to wills and testaments, executors and administrators, and the settlement of estates," page 597, Revised Statutes of 1845, one of whom remained with him, the other living apart from him with a relative—A, during his lifetime, declaring his intention to return to Missouri, to pursue his former occupation: *Held,* that A was not a housekeeper within the meaning of the said fourth section, and that his children could not receive the same amount of property that would have been by law allowed to the widow of A.

"ORDERED by the court, that all the property mentioned in the appraisement bill and inventory of said administrator, be forthwith delivered up by said administrator to Michael Koch, guardian, for the use of his wards, children and heirs at law of Leonard, deceased."

It is hereby agreed by the attorneys on both sides of this case, that the foregoing is a correct transcript and order of the St. Clair County Court, and that the said St. Clair Circuit Court affirmed the same on appeal at its Spring term, 1861; and that the following was all the material evidence introduced in said trial, in said Circuit Court, to wit:

Leonard Koch died intestate in said county, September 30, 1860. Joseph Veile, his brother-in-law, took out letters of administration in said county, on his estate, December 10, 1860. About the same time, Michael Koch, brother of deceased, took out letters of guardianship, in said county, for the two minor children of deceased, who are his only heirs at law, and who at the commencement of this suit had the custody of said children. Said Leonard Koch, deceased, left, at the time of his death, Anne Maria Koch and Rosa Koch, the one four years of age, the other ten years of age, his only children and heirs at law, and no widow, and no more property than the quantity and amount mentioned in Act 37, page 597, Revised Statutes of the year 1845, and the amendments thereto, consisting of household furniture and musical instruments. That said deceased, about a year before his death, had a wife, with whom he was keeping a hotel in St. Louis, Mo.; that soon afterwards his wife died, and he moved with said children to another part of the city of St. Louis, Mo., where he rented a couple of rooms, and he and his children kept house for about nine months, he teaching music for a livelihood. About two months before his death, and while so situated, his brother and brother-in-law, who are the plaintiff and defendant in this suit, being informed that said Leonard Koch was confined to his room, and part of the time to the bed, with consumption, and having obtained his consent, went over from St. Clair county aforesaid, where they resided, to St. Louis, Mo., about fourteen miles, with a two-horse wagon, and moved the said Leonard, his children, and all his property, over to St. Clair county, and placed the same at the residence of said Joseph Veile, whose wife is the sister of said deceased, said Michael Koch remarking at the time that it would be inconvenient for deceased to go to his house, as his wife was sick. Deceased was so far advanced with sickness at that time that he was placed on a bed in the wagon while being brought over. Deceased was placed in a room in the house of Veile, which was furnished from that time till his death, partly with the furniture of Veile, and partly with deceased's furniture; the bed, table, one bureau, and chairs, belonged to Veile; one bureau, a stand, the lounge on which deceased generally laid, as well as some other things, belonged to deceased. Deceased, while there, till his death, was sometimes walking about, but generally confined to his room or bed. After being there about two weeks, he told Mr. Von Bernum he might take his youngest child and keep it till he got well, but he would not part with her permanently; the older one would not be so much trouble to Mrs. Veile, and

could help him some, and that she might stay with him. Thereupon the youngest one went and lived with Mr. Von Bernum, about half a mile distant, until deceased died, and the older one remained at Veile's—was frequently seen to make soup for and to bring it to her father, and waited upon him generally; she slept in another room (up stairs) with Veile's daughter, and ate at Veile's table, with his children, several times. Michael Koch, who is a butcher, sent meat to his brother Leonard, with which to make soup, which soup was used by deceased, and the meat by Veile's family. The cooking was all done on Veile's stove, with Veile's fire-wood. Michael lived in Centreville, and Veile lived about half a mile from there. Leonard, while at Veile's, remarked that if he should get well, he thought he would move back to St. Louis, where he would ·follow music teaching again. Said daughter also assisted Mrs. Veile in cooking, and washed generally for her father with the materials and implements of Veile. There was no agreement made about charging for board or rent. The daughter testified, that Mrs. Veile did not generally wait upon deceased on account of his offensive smell.

Now it is further agreed, that this suit stand as appealed by said Veile to the Supreme Court, to be tried at Springfield, the said Veile having filed an appeal bond, which is hereby accepted. And it is further agreed, that if the said Supreme Court is of opinion that the said Leonard Koch was a housekeeper, the head of a family, at the time of his death, under the evidence, within the meaning of section four of Act No. 37, page 597, of the Revised Statutes of 1845, and that the said children were then residing with him, within the meaning of said section, so that they became thereby entitled to the property mentioned in said act, then said court shall affirm the judgment below. If the court, however, is of a contrary opinion, then said judgment below is to be reversed.

J. B. UNDERWOOD, for Veile.

W. B. UNDERWOOD, and J. B. HAY, for Koch, Guardian.

WALKER, J. This record presents upon the agreed facts in the case, the question, whether the property left by deceased passes to the administrator or to the guardian. It is urged, that by the operation of the fourth section of the Act of 21st February, 1849, (Scates' Comp. 1202), the property in controversy belongs to the minor heirs of deceased. That section provides that any person dying intestate, being "a house-

keeper and the head of a family, and shall leave no widow, there shall be allowed to the children of the intestate, residing with him, (including all males under eighteen years of age, and all females), at the time of his death, the same amount of property as is allowed to the widow by this act, and the act to which this is an amendment." It is conceded, that the property consists of such articles as are enumerated in the law, and that the children are such as are provided for in the act; if the deceased was a housekeeper and his children resided with him, within the meaning of the statute.

It is shown by the evidence, that the deceased being at the time in feeble and declining health, the present parties to this record brought him from St. Louis, in Missouri, to this State. He then remained with and accepted a room in the house of appellant until his death. He was, when he came to the State, feeble, and was confined the greater portion of his time to his room or bed. His elder daughter remained with him, and waited upon and attended to him, until his death. The younger was placed with a friend, with the understanding that, on her father's recovery, she should return to him. The daughter who remained with him, sometimes ate at the table of appellant, and slept with his daughter in a different apartment from that occupied by deceased. Appellee furnished deceased with meat, from which soup was made, and which deceased ate, but the meat was used by appellant's family. The cooking was done on his stove, and with his wood. Deceased, before his death, expressed the intention of again returning to St. Louis, when he should regain his health, and there to resume his profession of teaching music.

From this evidence it is apparent, that the arrangement for deceased to remain with appellant, was temporary and not permanent. The evidence fails to show any design to reside in Illinois as his home, but on the contrary, he expressed the design of returning to Missouri, to pursue his profession. And it must have been his purpose to make that State his permanent home. So far as we can gather his intention from all the facts in the record, he never intended to make this State his residence. He obviously came to this State, with the design of remaining for a limited period only, and then to return. We find no fact in the record which indicates any intention to abandon his residence in Missouri. And to entitle his children to the beneficent provisions of this statute, he should manifestly have been a resident of this State. This law was not designed to operate, nor can it operate, upon residents of other States. Residents of other jurisdictions, although they may be in the condition specified by the act,

are not embraced within its provisions, and hence have no right to claim its benefits.

Nor does the evidence show that he was a householder. He, it is true, occupied one room of appellant's dwelling, and so far as appears from the evidence, he and his daughter were its only occupants. He was not a lessee of the room. He paid no rent, nor does it appear that any arrangement existed, giving him any legal right to continue its occupancy, against the consent of appellant. Notwithstanding he furnished it in part, it does not appear that he was there in any other relation than that of a visitor. Appellant had the undoubted right to control its use. He had the power at any time to require it to have been vacated. He could have had deceased removed to another room in the house, as convenience or necessity might have required. If appellant had the right to perform these acts, they were certainly inconsistent with the authority of a housekeeper, who may certainly control his household affairs as he may choose, independent of the will of another. This was by no means the condition of deceased, with reference to the room which he occupied.

To bring the parties claiming its benefits within the provisions of the act, deceased must also have been the head of a family, and that family should have resided with him. In this case, we think the evidence shows that appellant was the head of the family, and not the deceased, during his life. Deceased and his daughter were, it might be only temporarily, a part of his family, and his younger daughter was for the time being a part of another family, residing in a separate and distinct tenement. Deceased, being himself a guest, we think he was in no sense a resident, and his children were not residing with him. If they were, it was in Missouri, and not in this State, as that was his residence.

Whilst an act so beneficent in its character, and directed to objects of the tenderest care of the law, should receive a reasonably liberal construction, yet it cannot be perverted to purposes or objects not contemplated by its framers. To give the act such a construction as to embrace this property, would be calculated to work injustice to creditors in other cases, if not in this. However much we might be inclined to permit the guardian to hold this property for the benefit of his wards, they are not within the provisions of the statute, and the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*